IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| OTIS MILLER,<br><br>      Petitioner,<br><br>vs.<br><br>WARDEN KENNETH BLACK,<br><br>      Respondent. | CASE NO. 1:22-cv-662-JRK<br><br>JUDGE JAMES R. KNEPP, II<br><br>MAGISTRATE JUDGE DARRELL A. CLAY<br><br>**REPORT AND RECOMMENDATION** |

On April 25, 2022, Petitioner Otis Miller, a prisoner in state custody, filed a *pro se* petition seeking a writ of habeas corpus under 28 U.S.C. § 2254. (ECF #1). The District Court has jurisdiction over the petition under § 2254(a). On June 23, 2022, pursuant to Local Civil Rule 72.2, this matter was referred to me to prepare a Report and Recommendation. (Non-document entry of June 23, 2022). On November 17, 2022, Respondent Kenneth Black, in his official capacity as Warden of the Richland Correctional Institution (hereinafter, the State), returned the writ and argued no relief was warranted. (ECF #8). On December 27, 2022, Mr. Miller submitted a traverse to the return of the writ that included a request to expand the record under Habeas Rule 7. (ECF #10).

For the reasons discussed below, I recommend the District Court **DISMISS** the petition because the grounds it raises are procedurally defaulted. I **DENY** the motion to expand the record as moot.

1

PROCEDURAL HISTORY

**A.    State court factual findings**

The Ohio Court of Appeals, Eleventh Appellate District, made the following factual findings on direct appeal. These findings are presumed correct unless Mr. Miller rebuts that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

> {¶2} The instant matter arose from a lengthy investigation by the Lake County Narcotics Agency ("LCNA") which culminated in one of the largest drug arrests in the county's recent history. On November 14, 2017, LCNA conducted a controlled drug buy from [Mr. Miller]. During the buy, [Mr. Miller] sold a confidential informant an ounce of methamphetamine in exchange for $900. Agents subsequently secured a search warrant for [Mr. Miller]'s residence. The search resulted in the seizure of cocaine, methamphetamine, marijuana, alprazolam, methadone, as well as firearms and ammunition.

> {¶3} [Mr. Miller] was indicted on a total of 14 charges, 12 of which were felonies. All counts included forfeiture specifications and seven included major drug offender specifications. [Mr. Miller] originally pleaded not guilty, but withdrew the plea and entered pleas of guilty to one count of trafficking in cocaine, a felony of the first degree and one count of aggravated trafficking in drugs, a felony of the second degree. After holding a hearing, [Mr. Miller] was sentenced to 10 years on the trafficking in cocaine charge and two years on the aggravated trafficking in drugs charge. The trial court ordered the sentences to be served consecutively for an aggregate prison term of 12 years.

(ECF #8-1 at PageID 201-02; *see also State v. Miller*, No. 2018-L-133, 2019 WL 2420025, at *1 (Ohio Ct. App. June 10, 2019)).

**B.    Direct appeal**

On November 27, 2018, Mr. Miller timely appealed his sentence to the Eleventh District. (ECF #8-1 at PageID 165). In his appeal, Mr. Miller raised one assignment of error, arguing "[t]he trial court erred by sentencing [Mr. Miller] to mandatory and consecutive prison sentences totaling 12 years." (*Id.* at PageID 176). The State filed a merit brief in response. (*Id.* at PageID 186-98). On

2

June 10, 2019, the Eleventh District affirmed the trial court's judgment. (*Id.* at PageID 209; *see also Miller*, 2019 WL 2420025). Mr. Miller did not appeal that decision to the Supreme Court of Ohio.

**C.     Application to reopen the direct appeal under Ohio Appellate Rule 26(B)**

On July 22, 2019, Mr. Miller timely filed *pro se* an application to reopen his direct appeal under Ohio Appellate Rule 26(B). (ECF #8-1 at PageID 211-19). In his application, Mr. Miller argued his appellate counsel was ineffective for not arguing his trial counsel (who also was his appellate counsel)[1] provided constitutionally deficient assistance by abandoning a pending motion to suppress evidence found in the traffic stop of his vehicle and by inducing Mr. Miller to plead guilty prior to a hearing on that motion. (*See id.* at PageID 217, 235).

On November 8, 2019, the Eleventh District denied Mr. Miller's application but suggested a petition for post-conviction relief under Ohio Revised Code § 2953.21(A)(2) was the proper vehicle for presenting his claim of ineffective assistance of counsel. (*Id.* at PageID 264-67). The Eleventh District noted that such a petition was due by December 19, 2019. (*Id.* at PageID 266) ("The [trial] transcript was filed with this court on December 19, 2018. Thus, [Mr. Miller] has 365 days from that date to file a timely petition for post-conviction relief."). Mr. Miller did not appeal the denial of reopening to the Supreme Court of Ohio.

**D.     Petition for post-conviction relief under Revised Code § 2953.21**

On January 2, 2020, Mr. Miller filed *pro se* a petition for post-conviction relief under Revised Code § 2953.21. (ECF #8-1 at PageID 269-70). The petition raised two grounds for relief, as follows:

---

[1]     Both before the trial court and on appeal, Mr. Miller was represented by counsel from the Lake County Public Defender. (ECF #8-1 at PageID 134, 157, 165, 175).

3

1.  Trial counsel rendered ineffective assistance in violation of [Mr. Miller]'s constitutional rights guaranteed under the Sixth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution. Trial counsel failed to challenge the [validity] of the traffic stop in that said traffic stop was conducted without probable cause. Fourth Amendment violation.

2.  Court-appointed trial counsel failed to follow through with [her] motion to suppress evidence obtained in violation of the Fourth Amendment. [Mr. Miller] was insistent on the suppression hearing which was re-scheduled several occasions by the state and/or the court.

(*Id.* at PageID 270). The State responded, arguing the petition was untimely and did not satisfy the procedural requirements under Ohio law to permit review of an untimely petition. (*Id.* at PageID 275-79).

On January 17, 2020, Mr. Miller submitted *pro se* an amended post-conviction petition to raise four grounds for relief, as follows:

1.  Mr. Miller received ineffective assistance of counsel in violation of his rights guaranteed pursuant to the Sixth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution.

2.  [Mr. Miller] received ineffective assistance of counsel in violation of his rights pursuant to the Sixth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution when court-appointed counsel coerced [Mr. Miller] to plead guilty before conducting the suppression hearing challenging the stop and seizure.

3.  Mr. Miller contends that the traffic stop was constitutionally flawed because no probable cause or reasonable suspicion of criminal behavior existed prior to the stop in violation [of] the fourth Amendment of the United States Constitution, as well as Article I, Section 14 of the Ohio Constitution.

4.  Mr. Miller contends his Fourth Amendment right under the United States Constitution was violated because the inventory search of his vehicle was a mere pretext for conducting a warrantless evidentiary search because there was no legitimate basis for the police to request permission to drive Mr. Miller's car back to his residence but, drive it to an unknown location and conduct an evidentiary search.

4

(*Id.* at PageID 296, 299, 302, 305). The State responded to the amended petition and argued Mr. Miller waived his right to pursue his motion to suppress when he pled guilty. (*Id.* at PageID 320).

On January 27, 2020, Mr. Miller filed *pro se* a motion for leave to again amend his petition and add a fifth ground for relief:

> 5.     Mr. Miller received ineffective assistance of counsel in violation of his rights pursuant to the Sixth Amendment of the United States Constitution and Section 10, Article I of the Ohio Constitution.

(*Id.* at PageID 324). In his motion, Mr. Miller contended that had his trial counsel investigated the search warrant leading to his arrest, she would have discovered "the alleged search warrants were issued without probable cause, or at the very least, that there was 'a Fourth Amendment issue that needed to be litigated' relating to the alleged search warrants" and that had he been aware of those issues, he would not have pled guilty. (*Id.*).

On March 11, 2021, the trial court denied Mr. Miller's petition for post-conviction relief because the original petition was untimely and no exception permitting consideration of an untimely petition applied. (*Id.* at PageID 388-89).

On April 19, 2021, Mr. Miller timely appealed *pro se* the trial court's denial of the petition for postconviction relief to the Eleventh District. (*Id.* at PageID 391). In his merit brief, Mr. Miller raised the following assignments of error:

> 1.     The trial court erred in holding that the petition was filed (inexcusably) late.
>
> 2.     Mr. Miller received ineffective assistance of counsel in violation of his rights pursuant to the Sixth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution.
>
> 3.     [Mr. Miller] received ineffective assistance of counsel in violation of his rights pursuant to the Sixth Amendment of the United States Constitution and Section 10, Article I of the Ohio Constitution when court-appointed counsel coerced [Mr. Miller] to plead guilty before conducting the suppression hearing challenging the stop and seizure.

5

4.     [Mr. Miller] contends that the traffic stop was constitutionally flawed because no probable cause or reasonable suspicion of criminal behavior existed prior to the stop in violation of the Fourth Amendment to the United States Constitution, as well as Article I, Section 14 of the Ohio Constitution.

5.     [Mr. Miller] contends his Fourth Amendment right under the United States Constitution was violated because the inventory search of his vehicle was a mere pretext for conducting a warrantless evidentiary search because there was no legitimate basis for the police to request permission to drive Miller's car back to his residence, but drive to an unknown location and conduct an evidentiary search.

6.     [Mr. Miller] received ineffective assistance of counsel in violation of his rights pursuant to the Sixth Amendment of the United States Constitution and Section 10, Article I of the Ohio Constitution.

(*Id.* at PageID 410, 412, 415, 418, 421). In support of his first assignment of error, Mr. Miller argued he was unavoidably prevented from discovering that a post-conviction petition was the proper legal avenue to bring his ineffective-assistance-of-counsel claims, allowing the trial court to review his untimely petition under Revised Code § 2953.21(A)(1)(a). (*See* ECF #8-1 at PageID 410-11). The state filed a merits brief in response, and Mr. Miller filed *pro se* a reply brief. (*Id.* at PageID 433, 457). On November 1, 2021, the Eleventh District affirmed the trial court's denial of Mr. Miller's petition for post-conviction relief. (*Id.* at PageID 459-467; *see also State v. Miller*, No. 2021-L-040, 2021 WL 5054362 (Ohio Ct. App. Nov. 1, 2021), *appeal not allowed*, 179 N.E.3d 1289 (Ohio 2022) (table)).

On November 29, 2021, Mr. Miller timely filed *pro se* a notice of appeal to the Supreme Court of Ohio. (ECF #8-1 at PageID 470). In his memorandum in support of jurisdiction, Mr. Miller set forth two propositions of law:

1.     When appellate counsel fails to inform her client of the potential post-conviction issues or the mandatory procedures involved with such pleadings [Mr. Miller] is denied the effective assistance of counsel in violation of the Sixth and Fourteenth Amendments to the United States Constitution.

6

2.     When trial counsel fails to review a search warrant and supporting affidavit prior to advising their client to enter a plea of guilty the accused is denied the effective assistance of counsel under the Sixth and Fourteenth Amendments, and the plea is not made knowingly and intelligently.

(*Id.* at PageID 477, 481). The State filed a memorandum opposing jurisdiction. (*Id.* at PageID 499-515). On February 1, 2022, the Supreme Court of Ohio declined jurisdiction. (ECF #8-1 at PageID 519; *see also State v. Miller*, 179 N.E.3d 1289 (Ohio 2022) (table)).

### FEDERAL HABEAS PETITION

On April 20, 2022, Mr. Miller filed a petition for a writ of habeas corpus. (ECF #1 at PageID 24). Mr. Miller raises two grounds for relief:

1.     [Mr. Miller] was denied the effective assistance of trial counsel, in violation of his Sixth and Fourteenth Amendments to the United States Constitution when counsel failed to review the search warrants and supporting affidavit and failed to use available facts and evidence to challenge the execution of the search warrant.

2.     [Mr. Miller] was denied the effective assistance of counsel on appeal, in violation of the Sixth, and Fourteenth Amendments to the United States Constitution, when counsel failed to inform him of the potential post-conviction issues and the mandatory procedures associated with such pleadings.

(*Id.* at PageID 14, 20).

### STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs Mr. Miller's petition for writ of habeas corpus. *Lindh v. Murphy*, 521 U.S. 320, 336 (1997). AEDPA recognizes that "[s]tate courts are adequate forums for the vindication of federal rights" and therefore acts as a "formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Burt v. Titlow*, 571 U.S. 12, 19 (2013). It "dictates a highly deferential standard for evaluating state-court rulings which demands that state-court decisions be given the benefit of the

7

doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005) (citation and quotation omitted). Accordingly, an application for habeas corpus cannot be granted for a person in custody pursuant to a state conviction unless the adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d).

For the purposes of § 2254(d)(1), clearly established federal law "is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). It includes "the holdings, as opposed to dicta, of [Supreme Court] decisions." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). A state-court decision is contrary to Supreme Court precedent if the state court arrives at a conclusion opposite that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has decided on a set of materially indistinguishable facts. *Id.* at 405; *White v. Mitchell*, 431 F.3d 517, 523 (6th Cir. 2005). The word "contrary" means "diametrically different, opposite in character or nature, or mutually opposed." *Williams*, 529 U.S. at 405. A state court does not act contrary to clearly established law when the precedent of the Supreme Court is ambiguous or nonexistent. *See, e.g., Mitchell v. Esparza*, 540 U.S. 12, 17 (2003) (per curiam).

A state-court decision involves an unreasonable application of the Supreme Court's precedent if the state court identifies the correct governing legal rule from the Supreme Court's cases but unreasonably applies it to the facts of the state prisoner's case, or if the state court either

unreasonably extends a legal principle from the Supreme Court's precedent to a new context where it should not be applied or unreasonably refuses to extend that principle in a new context where it should apply. *Williams*, 529 U.S. at 407. The appropriate measure of whether a state-court decision unreasonably applied clearly established federal law is whether that state adjudication was "objectively unreasonable" and not merely erroneous or incorrect. *Id.* at 409-11; *see also Machacek v. Hofbauer*, 213 F.3d 947, 953 (6th Cir. 2000). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

Under § 2254(d)(2), a state court's factual determinations stand unless they are objectively unreasonable in light of the evidence presented in state court. *Id.* at 100. The Supreme Court has repeatedly emphasized "a state court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion." *Burt*, 571 U.S. at 18. Under AEDPA, "a determination of a factual issue made by a state court shall be presumed to be correct. [Mr. Miller] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2554(e)(1).

Comity principles also require federal courts to defer to a state court's judgment on issues of the state's substantive and procedural law. *Murray v. Carrier*, 477 U.S. 478, 491 (1986); *Engle v. Isaac*, 456 U.S. 107, 128-29 (1982). Federal courts must accept a state court's interpretation of its statutes and rules of practice. *Duffel v. Dutton*, 785 F.2d 131, 133 (6th Cir. 1986).

The standard is intended to be difficult to meet and reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. *Harrington*, 562 U.S. at 102-03; *see also Brown v.*

*Davenport*, 596 U.S. 118, 133 (2022) (describing habeas as an "extraordinary remedy, reserved for only extreme malfunctions in the state criminal justice system and different in kind from providing relief on direct appeal") (cleaned up). To obtain "habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington*, 562 U.S. at 103.

When a properly presented federal constitutional claim was not adjudicated on the merits in the state courts, the reviewing federal court must apply the pre-AEDPA standard, reviewing *de novo* questions of law and mixed questions of law and fact. *Durr v. Mitchell*, 487 F.3d 423, 432 (6th Cir. 2007).

## PROCEDURAL BARRIERS TO FEDERAL HABEAS REVIEW

Before a federal court may review the merits of a petitioner's habeas claims, the petitioner must overcome several procedural barriers. One such barrier is procedural default. Any claim not evaluated by the state courts on the merits because the claim was not properly presented is procedurally defaulted and thus is likely not cognizable on federal habeas review. *Daniels v. United States*, 532 U.S. 374, 381 (2001). Absent a petitioner demonstrating either cause and prejudice or that failure to review the claim would result in a fundamental miscarriage of justice (discussed below), a federal court will not consider the merits of procedurally defaulted claims. *Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir. 2006).

There are two avenues by which a petitioner's claim may be procedurally defaulted. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). First, procedural default occurs if a petitioner "fails to comply with state procedural rules in presenting his claim to the appropriate

state court." *Id.* To determine whether a petitioner's failure to comply with a state procedural rule bars review of his habeas claims, courts in the Sixth Circuit perform a four-pronged analysis: (1) whether there is a state procedural rule applicable to petitioner's claim and whether petitioner failed to comply with that rule; (2) whether the state court enforced the procedural rule; (3) whether the procedural rule is an adequate and independent state ground on which the state can foreclose review of the federal constitutional claim; and (4) whether the petitioner can demonstrate cause for his failure to follow the rule and that he was actually prejudiced by the alleged constitutional error. *See Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).

Second, a claim may be procedurally defaulted when the petitioner fails to exhaust a claim by raising it in state court and pursuing it through the state's "ordinary appellate review procedures." *Williams*, 460 F.3d at 806; *see also O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999) ("Boerckel's failure to present three of his federal claims to the Illinois Supreme Court in a timely fashion has resulted in a procedural default of those claims"); *Baston v. Bagley*, 282 F.Supp.2d 655, 661 (N.D. Ohio 2003) ("Issues not presented at each and every level [of the state courts] cannot be considered in a federal habeas corpus petition."). As addressed above, "[i]f, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted." *Williams*, 460 F.3d at 806. Although the exhaustion requirement is satisfied because there are no longer any state remedies available to the petitioner, *see Coleman v. Thompson*, 501 U.S. 722, 732 (1991), the petitioner's failure to have the federal claims considered in the state courts constitutes a procedural default of those claims and bars federal habeas review. *Williams*, 460 F.3d at 806; *Shinn v. Ramirez*, 596 U.S. 366, 371 (2022) (holding a claim is procedurally defaulted on federal habeas review where a state prisoner has failed to first present a

11

federal claim to the state court in accordance with state procedures and the state court would dismiss the claim on that basis).

In Ohio, a petitioner must bring a post-conviction petition no later than 365 days after the date on which the trial transcript is filed in the direct appeal of the judgment of conviction. Ohio Rev. Code § 2953.21(A)(2). An Ohio court "may not entertain a petition filed after the expiration of the period prescribed in [Section 2953.21(A)(2)]." *See id.* § 2953.23(A). The Sixth Circuit has consistently held that the failure to follow the time requirement in Revised Code § 2953.21(A)(2) is an adequate and independent state procedural ground on which to bar further review of a claim. *See, e.g., Smith v. Warden, Toledo Corr. Inst.*, 780 F.App'x 208, 219 (6th Cir. 2019).

To overcome a procedural bar, a petitioner must show cause for the default and actual prejudice because of the alleged violation of federal law or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750. Habeas petitioners cannot rely on conclusory assertions of cause and prejudice to overcome procedural default; they must present affirmative evidence or argument as to the precise cause and prejudice produced. *See Lundgren*, 440 F.3d at 764. A finding of cause and prejudice does not entitle a petitioner to habeas relief; it only allows a federal court to consider the merits of a claim that otherwise would have been procedurally defaulted. *See Martinez v. Ryan*, 566 U.S. 1, 17 (2012).

A showing of cause for the default requires more than the mere proffer of an excuse. Rather, "the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded [] efforts to comply with the State's procedural rule." *Murray*, 477 U.S. at 488; *see also Wogenstahl v. Mitchell*, 668 F.3d 307, 321 (6th Cir. 2012) (noting such objective factors include "interference by officials, an

attorney error rising to the level of ineffective assistance of counsel, or a showing of a factual or legal basis for a claim that was not reasonably available."). Neither a petitioner's *pro se* status nor his ignorance of the law and procedural filing requirements are enough to establish cause to overcome procedural default. *Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir. 2004).

To demonstrate prejudice sufficient to overcome procedural default, a petitioner must show more than mere errors in the state trial creating a possibility of prejudice; rather, the petitioner must show that the alleged errors worked to the petitioner's actual and substantial disadvantage, infecting the entire trial with error of constitutional dimensions. *Murray*, 477 U.S. at 494. There is no prejudice where the petitioner does not show a reasonable probability that the result of the proceeding would have been different. *See Ambrose v. Booker*, 801 F.3d 567, 577-78 (6th Cir. 2015) (quoting *Strickland v. Washington*, 466 U.S. 668, 694 (1984)).

Alternatively, a petitioner may overcome procedural default by showing that a fundamental miscarriage of justice will occur if the claims are not considered. *Coleman*, 501 U.S. at 750; *Murray*, 477 U.S. at 495-96. A fundamental miscarriage of justice occurs in the "extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *See Murray*, 477 U.S. at 495-96; *see also Schlup v. Delo*, 513 U.S. 298, 327 (1995) (noting a fundamental miscarriage of justice can occur where the petitioner shows it is more likely than not that no reasonable juror would vote to convict in light of newly presented evidence.). Actual innocence means "factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). A valid actual-innocence claim must be supported by new reliable evidence, such as exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence, which was not presented at trial and is so strong a court cannot have confidence

13

in the outcome of the petitioner's trial. *Schlup*, 513 U.S. at 324. In other words, a "petitioner must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Id.* at 327.

ANALYSIS

The State argues both of Mr. Miller's grounds for relief are procedurally defaulted and otherwise meritless. (*See* ECF #8). Specifically, the State contends Mr. Miller procedurally defaulted both grounds by not presenting them to the state courts in a timely post-conviction petition. (*Id.* at PageID 84, 106). The State further contends any constitutional defects from any deficient performance by Mr. Miller's counsel were cured by his guilty plea because it was made knowingly and voluntarily. (*See id.* at PageID 107).

**A. Ground One of Mr. Miller's petition alleging ineffective assistance of trial counsel is procedurally defaulted.**

In Ground One, Mr. Miller argues his trial counsel was ineffective when reviewing the search warrants and supporting affidavits and failing to challenge the validity of the search warrant. (ECF #1 at PageID 14). I conclude this ground is procedurally defaulted because Mr. Miller did not present it to the state courts in accordance with state procedural rules and although he can establish cause for this default, he cannot establish prejudice.

As discussed above, federal courts may not consider a petitioner's claims in federal habeas proceedings unless the petitioner has exhausted state remedies and "compl[ied] with state procedural rules in presenting his claim to the appropriate state court." *Williams*, 460 F.3d at 806. A court engages in a four-part inquiry when determining whether a claim is procedurally defaulted:

> First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule . . . Second, the court must decide whether the state courts actually enforced the state procedural sanction . . . Third, the court must decide whether the state

14

procedural forfeiture is an adequate and independent state ground on which the state can rely to foreclose review of a federal constitutional claim . . . [Fourth, the court must decide whether] there was cause for [the petitioner] to not follow the procedural rule and [whether] he was actually prejudiced by the alleged constitutional error.

*Maupin*, 785 F.2d at 138 (cleaned up).

Here, the first three prongs of the *Maupin* test are met. First, Ohio has a procedural rule requiring a petitioner to file a post-conviction petition no later than 365 days after the date the trial transcript is filed in the direct appeal of the judgment of conviction. *See* Rev. Code § 2953.21(A)(2)(a). Second, the Eleventh District enforced that procedural rule when it rejected his untimely post-conviction petition. (ECF #8-1 at PageID 461-64). Mr. Miller filed his post-conviction petition on January 2, 2020, which was two weeks after the 365-day deadline lapsed on December 19, 2019. (ECF #8-1 at PageID 269). Third, denial of post-conviction relief because the petition is untimely constitutes an independent and adequate state-law ground to bar further review of a claim. *See Smith*, 780 F.App'x at 219.

In applying *Maupin*'s fourth prong, I turn to whether Mr. Miller showed cause for the default and actual prejudice because of the alleged violation of federal law. *Maupin*, 785 F.2d at 138. The "cause" component requires a petitioner to show some objective factor external to the defense impeded petitioner's efforts to comply with the state's procedural rule. *See Murray*, 477 U.S. at 488. A showing of cause requires more than the mere proffer of an excuse; a petitioner must present affirmative evidence or argument as to the precise cause and prejudice produced. *See Lundgren*, 440 F.3d at 764. As noted earlier, neither a petitioner's *pro se* status nor his ignorance of the law and procedural filing requirements will establish cause. *Bonilla*, 370 F.3d at 498.

Mr. Miller raises different points to contend he had cause necessary to overcome a procedural default. I discuss them in turn.

First, Mr. Miller asserts he was unaware of a second, unexecuted search warrant until the Eleventh District informed him of that warrant when it could not decide his ineffective-assistance-of-counsel claims on direct appeal. (ECF #1-1 at PageID 34; ECF #10 at PageID 668).[2] Mr. Miller contends the absence of that warrant from the trial court record was the cause of his delayed filing. (ECF #10 at PageID 668). It is unclear whether Mr. Miller raises the missing search warrant to assert the cause for his default was his lacking the factual basis for his claim or his appellate counsel's ineffectiveness. At various points, Mr. Miller argues he could not file his state post-conviction petition without the second, unexecuted search warrant. (*See* ECF #1-1 at PageID 34-35). Elsewhere, however, he argues that "trial counsel's failure to ensure the trial court record placed before the Appellate Court included the search warrants" establishes cause for his delayed filing. (ECF #10 at PageID 668). Regardless, neither version of this argument establishes cause for the procedural default.

If the missing, unexecuted search warrant is raised to argue ineffective assistance of appellate counsel as cause for his default, that argument fails. Ineffective assistance of counsel may constitute cause only if the assertion of ineffective assistance of counsel is not itself procedurally defaulted. *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000). As discussed in Section B below, Mr. Miller's claim of ineffective assistance of appellate counsel is procedurally defaulted. Thus, any

---

[2]      There is much confusion between the parties about the search warrants used in Mr. Miller's prosecution. The State represents there was an unexecuted warrant that was updated by a warrant that was executed. (ECF #8 at PageID 91). The State asserts that only the executed warrant was used in the State's prosecution of Mr. Miller, and it was provided in discovery. (*Id.*).

alleged failure of his counsel on appeal to prepare the appellate record adequately cannot serve as cause for the procedural default of his other claim.

If Mr. Miller's argument is construed to assert he was unaware of the factual basis for his ineffective-assistance-of-trial-counsel claim, the argument equally fails. A showing that the factual basis for a claim that was not reasonably available can serve as an objective external factor to supply cause for a procedural default. *Wogenstahl*, 668 F.3d at 321. Mr. Miller's claim is that his trial counsel was ineffective for advising him to plead guilty instead of pursuing a motion to suppress. (ECF #1-1 at PageID 41). The unexecuted search warrant cannot serve as the factual basis for that claim because it was never used to secure inculpatory evidence against Mr. Miller and thus has no bearing on whether his counsel was ineffective for advising him to plead guilty instead of contesting the search. Because discovery of the second, unexecuted warrant did not supply the factual basis for his claim of ineffective assistance of trial counsel, it cannot serve as cause for his procedural default of that claim.

Second, Mr. Miller raises as cause that his attorney's performance while representing him during his trial and direct appeal was deficient because she failed to advise him of post-conviction remedies for ineffective-assistance-of-counsel claims. (ECF #1-1 at PageID 15, 22, 32, 44, 46). It is well established that a claim of ineffective assistance of appellate counsel is generally unavailable as a means of showing cause for petitioners whose default occurs during post-conviction proceedings, as here. *See Coleman*, 501 U.S. at 752; *West v. Carpenter*, 790 F.3d 693, 697 (6th Cir. 2015).

But in *Martinez v. Ryan*, 566 U.S. 1 (2012), the Supreme Court carved out a "narrow exception" to *Coleman*, holding a procedural default will not bar a federal habeas court from hearing ineffective-assistance-of-trial-counsel claims where state law requires those claims to be

17

raised for the first time in a collateral proceeding and there was no counsel or counsel in that proceeding was ineffective. 566 U.S. at 8-9. In *Trevino v. Thaler*, 569 U.S. 413, 423, (2013), the Supreme Court explained the *Martinez* exception to allow a federal habeas court to find cause to excuse a petitioner's procedural default where: (1) the ineffective-assistance-of-trial-counsel claim was a "substantial" claim; (2) the "cause" consists of no counsel or ineffective counsel during the state collateral-review proceeding; (3) the state collateral-review proceeding was the initial review of the petitioner's ineffective-assistance-of-trial-counsel claim; and (4) state law requires that the ineffective-assistance-of-trial-counsel claim be raised in the initial review post-conviction proceeding. The *Trevino* Court modified the fourth requirement so that *Martinez* would apply where state criminal procedure may "on its face appears to permit (but does not require) the defendant to raise the claim [of ineffective assistance of trial counsel] on *direct appeal*." *Id.* at 428 (emphasis in original).

Mr. Miller meets the first three *Martinez-Trevino* requirements. First, he raises a "substantial" claim of ineffective assistance, meaning it has some merit. *See Martinez*, 566 U.S. at 14. Within the context of the *Martinez* exception, the Sixth Circuit has held that an attorney's failure to advise a habeas petitioner of potentially available post-conviction relief and the necessity to proceed expeditiously to obtain such relief can be a substantial claim of ineffective assistance of counsel. *See Gunner v. Welch*, 749 F.3d 511, 515-16, 520 (6th Cir. 2014); *see also McClain v. Kelly*, 631 F.App'x 422, 433-37 (discussing *Gunner*'s application in the context of the *Martinez-Trevino* exception). Second, Mr. Miller did not have the assistance of counsel during his state collateral proceedings. Third, the proceeding would have been the "initial" review of his ineffective-assistance claim because, as mentioned previously, the Eleventh District held direct appeal was an

18

inappropriate forum for Mr. Miller's ineffective-assistance-of-trial-counsel claim and directed him to pursue relief via collateral proceedings. (ECF #8-1 at PageID 266).

Mr. Miller also meets the fourth *Martinez-Trevino* factor. The Sixth Circuit has concluded that *Martinez* does not ordinarily apply in Ohio because Ohio permits ineffective-assistance-of-counsel claims on direct appeal. *Moore v. Mitchell*, 708 F.3d 760, 785 (6th Cir.), *cert. denied*, 571 U.S. 1077 (2013). However, the Sixth Circuit has applied the later *Trevino* decision in Ohio to the specific circumstance where the claim of ineffective assistance of trial counsel rests on facts outside the trial record. *White v. Warden, Ross Corr. Inst.*, 940 F.3d 270, 277-78 (6th Cir. 2019). On direct appeal, Ohio law limits the reviewing court "to the record of the proceedings at trial." *McGuire v. Warden, Chillicothe Corr. Inst.*, 738 F.3d 741, 751 (6th Cir. 2013). Where there is need for additional evidence, "Ohio effectively requires defendants to raise ineffective-assistance claims in post-conviction petitions." *White*, 940 F.3d at 277. The Eleventh District held Mr. Miller's ineffective-assistance-of-trial-counsel claim could not be raised in a direct appeal because it relied on facts outside the trial record and instead must be brought in post-conviction proceedings. (ECF #8-1 at 267). Because Mr. Miller meets all four *Martinez-Trevino* factors, he has shown cause for defaulting his claim of ineffective assistance of trial counsel.

In addition to showing cause, the fourth prong of the *Maupin* analysis requires that Mr. Miller show he was actually prejudiced by the alleged constitutional error. *Maupin*, 785 F.2d at 138. The Sixth Circuit has provided several guidelines in evaluating the prejudice component. *Id.* at 139. First, prejudice must be a result of the alleged constitutional violation, regardless of any procedural fault. *Id.* (citing *United States v. Frady*, 456 U.S. 152, 168 (1982)). Second, the burden is on the habeas petitioner to establish he was "actually prejudiced"; the possibility of prejudice is

insufficient. *See id.* "Actual prejudice" requires a showing that the alleged errors "worked to [the petitioner's] actual and substantial disadvantage, infecting [the] entire trial with error of constitutional dimensions." *See Frady*, 456 U.S. at 170. Third, the court should assume that the petitioner has stated a meritorious constitutional claim. *Maupin*, 785 F.2d at 139.

Applying these guidelines to Mr. Miller's case, I assume any failure of Mr. Miller's attorney to advise him about post-conviction relief and the deadline to file for it constitutes ineffective assistance of counsel and thus examine whether he was actually prejudiced by that ineffective assistance. I conclude that any failure by Mr. Miller's attorney did not work to his actual and substantial disadvantage because, after his attorney allegedly failed to advise him of potentially available post-conviction relief and before the deadline for that relief passed, the Eleventh District informed him of potentially available relief and its associated filing deadlines. The Eleventh District stated on November 8, 2019:

> A petition for post-conviction relief would be the appropriate vehicle for [Mr. Miller]'s claim. R.C. 2953.21(A)(2), authorizes a defendant to file a petition for post-conviction relief "no later than three hundred sixty-five days after the date on which the trial transcript is filed in the court of appeals in the direct appeal of the judgment of conviction[.]" The transcript was filed with this court on December 19, 2018. Thus, [Mr. Miller] has 365 days from that date to file a timely petition for post-conviction relief.

(ECF #8-1 at PageID 266). Thus, even if we assume Mr. Miller's trial counsel provided constitutionally deficient assistance, after November 8, 2019, Mr. Miller was no longer prejudiced by that failure.

The record confirms that Mr. Miller was aware of the deadline, but nevertheless did not timely file his petition. In his state post-conviction petition, Mr. Miller noted he had "a very limited amount of time to file a timely petition" and so he "reserve[d] the right to amend this petition any time." (ECF #8-1 at PageID 269-70). In his federal habeas petition, Mr. Miller

20

acknowledged he knew of the deadline when he prepared his state post-conviction petition, writing, "[h]aving informed Petitioner, on November 8, 2019, that his claim had to be raised in collateral proceedings, and had to be filed by December 19, 2019, Petitioner proceeded to prepare his post-conviction petition . . . ." (ECF #1-1 at PageID 17; *see also id.* at PageID 33). Mr. Miller then conceded his petition "was not filed until January 2, 2020, fourteen days beyond its filing deadline." (*Id.* at PageID 17; *see also id.* at PageID 33).

By his own account, Mr. Miller received actual notice of the appropriateness of a post-conviction petition and its deadline over a month before the deadline lapsed. Thus, any failure by his attorney to advise him cannot constitute cause for him missing the filing deadline. *See Hubbard v. Warden, London Corr. Inst.*, No. 1:09-cv-550, 2010 WL 3931500, at *5 (S.D. Ohio Sept. 7, 2010) (finding habeas petitioner cannot show that any error by his appellate counsel by failing to notify him of the appellate court's decision caused him to miss the filing deadline where petitioner conceded that he learned of the decision well within the timeframe for perfecting a timely appeal); *Dickerson v. Warden, Ross Corr. Inst.*, No. 2:15-CV-0068, 2016 WL 1642963, at *9 (S.D. Ohio Apr. 26, 2016) (finding no cause to excuse procedural default where petitioner had one week to file a discretionary appeal to preserve his claims), *aff'd,* 750 F.App'x 458 (6th Cir. 2018).

Thus, Mr. Miller was not prejudiced by his counsel's alleged failure to advise him of potential post-conviction relief. Any failure of his attorney in this regard no longer worked to Mr. Miller's actual and substantial disadvantage because the Eleventh District notified him of the potential availability of post-conviction relief and the need to file before December 19, 2019 to be timely. At best, there is the possibility of prejudice because had Mr. Miller known earlier about post-conviction relief, it might have been easier for him to meet the filing deadline. But the mere

possibility of prejudice is not enough to constitute the actual prejudice necessary to excuse a procedural default. *See Frady*, 456 U.S. at 168. Because Mr. Miller cannot establish prejudice, the fourth *Maupin* prong is not met and Mr. Miller's procedural default stemming from his untimely filing cannot be excused.

Further, Mr. Miller does not assert he is actually innocent of the offenses for which he was convicted such that failure to review the merits of his procedurally defaulted claims would result in a fundamental miscarriage of justice. *See Schlup*, 513 U.S. at 327.

Consequently, I recommend the District Court **DISMISS** the first ground for relief because it is procedurally defaulted.

**B.**    **Ground Two of Mr. Miller's petition alleging ineffective assistance of appellate counsel is also procedurally defaulted.**

In Ground Two of his petition, Mr. Miller argues his appellate counsel was ineffective by "fail[ing] to inform him [*i.e.,* Mr. Miller] of the potential post-conviction issues and the mandatory procedures associated with such pleadings." (ECF #1 at PageID 20). But, as discussed previously, Mr. Miller failed to present this claim to the state courts because his post-conviction petition was untimely and thus the claims in that petition are procedurally defaulted.

Unlike his claim for ineffective assistance of trial counsel, Mr. Miller cannot show cause to excuse the default of his claim for ineffective assistance of appellate counsel. The *Martinez-Trevino* exception only allows a habeas petitioner to raise a claim of ineffective assistance of *trial* counsel. *See McClain v. Kelly*, 631 F.App'x 422, 432 (6th Cir. 2015). The exception does not extend to a claim of ineffective assistance of *appellate* counsel. *See Davila v. Davis*, 582 U.S. 521, 534-35 (2017) (noting *Martinez/Trevino* exception "was principally concerned about *trial errors*—in particular, claims of ineffective assistance of *trial* counsel," and explaining "[t]he equitable concerns raised in

22

*Martinez* therefore do not apply" to claims of ineffective assistance of appellate counsel) (emphasis in original); *Porter v. Genovese*, 676 F.App'x 428, 434 (6th Cir. 2017) ("*Martinez/Trevino*'s limited exception does not extend to claims of ineffective assistance of appellate counsel."). Thus, Mr. Miller cannot rely on his claim that his attorney failed to advise him of state-postconviction relief to establish cause to excuse his procedural default of his ineffective-assistance-of-appellate-counsel claim. Because Mr. Miller cannot establish cause, the Court need not consider whether he can establish prejudice. *Benton v. Brewer*, 942 F.3d 305, 308 (6th Cir. 2019).

Consequently, I recommend the District Court **DISMISS** the second ground for relief because it is procedurally defaulted.

## C.    Mr. Miller's motion to expand the record is moot.

In his traverse to the return of writ, Mr. Miller moved to expand the record. (ECF #10 at PageID 675-76). Mr. Miller contends the merits of his claims turn on whether he "can 'demonstrate that his Fourth Amendment argument was so strong that it was mis-advice for defense counsel to advice [Petitioner] to take the plea . . . .'" (*Id.* at PageID 676 (quoting ECF #8 at PageID 87-88) (alteration in original)). Rule 7 states: "If the petition is not dismissed, the judge may direct the parties to expand the record by submitting additional materials relating to the petition." R. Governing Section 2254 Cases 7(a). Because I recommend the petition be dismissed given that Mr. Miller has procedurally defaulted both claims, I conclude his motion to expand the record is moot. Therefore, I **DENY** Mr. Miller's motion to expand the record.

### CERTIFICATE OF APPEALABILITY

A habeas petitioner may not appeal the denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability (COA) and specifies the issues that can be raised

on appeal. 28 U.S.C. § 2253(c). "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where a district court has determined a petitioner's constitutional claim to be without merit, the petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong" before receiving a COA. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When the district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether (i) the petition states a valid claim of the denial of a constitutional right and (ii) the district court was correct in its procedural ruling. *Id.* A showing that the appeal would succeed on the claim is not required to grant a COA. *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

Mr. Miller has made no substantial showing of the denial of any constitutional right. Jurists of reason would not find it debatable whether the grounds for relief are valid claims of the denial of constitutional rights. Therefore, I recommend the District Court deny Mr. Miller a COA as to both grounds in his petition.

## CONCLUSION AND RECOMMENDATION

Mr. Miller's two grounds for relief are procedurally defaulted because he failed to present them to the state courts in a timely post-conviction petition. Although Mr. Miller can demonstrate the required cause to excuse the procedural default of his first ground, he cannot show the required actual prejudice. For his second ground, Mr. Miller cannot establish cause for the default. For these reasons, I recommend the District Court **DISMISS** Mr. Miller's habeas petition. I

recommend the District Court deny Mr. Miller a certificate of appealability as to both grounds in

his petition. Further, I **DENY** Mr. Miller's motion to expand the record as moot.

    Dated: August 6, 2024

                                                    _____
                                                    DARRELL A. CLAY
                                                    UNITED STATES MAGISTRATE JUDGE


### Objections, Review, and Appeal

**Within 14 days after being served with a copy of this Report and
Recommendation, a party may serve and file specific written objections to the
proposed findings and recommendations of the Magistrate Judge.** *See* Fed. R. Civ.
P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1); Local Civ. R. 72.3(b). Properly asserted
objections shall be reviewed de novo by the assigned district judge.

Failure to file objections within the specified time may result in the forfeiture or
waiver of the right to raise the issue on appeal, either to the district judge or in a
subsequent appeal to the United States Court of Appeals, depending on how or
whether the party responds to the Report and Recommendation. *Berkshire v.
Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not
merely indicate a general objection to the entirety of the Report and
Recommendation; "a general objection has the same effect as would a failure to
object." *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir.
1991). Objections should focus on specific concerns and not merely restate the
arguments in briefs submitted to the Magistrate Judge. "A reexamination of the
exact same argument that was presented to the Magistrate Judge without specific
objections 'wastes judicial resources rather than saving them and runs contrary to
the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018
WL 3018175, at *2 (W.D. Ky. June 15, 2018) (quoting *Howard*, 932 F.2d at 509).
The failure to assert specific objections may in rare cases be excused in the interest
of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).